JOHN TULL v. THE TRUSTEES OF THE M. E. CHURCH SOUTH,
Kinston, N. C.

Upon the application of A, one of their number, B furnished the trustees
of a church who were at the time engaged in erecting a church building,
a quantity of brick and lumber, which were received by said trustees and
used by them in said building: In an action to recover the price of said
materials: IT WAS HELD, that the trustees were liable for the same, not-
withstanding A had no authority from them to purchase the materials
and have them charged to the church, but on the contrary, had promised
to make a gift of the same to the church, which the trustees believed he
was doing when the same were being furnished; and further, notwith-
standing said trustees, as a Board, never purchased or ordered from B
any materials whatever.

CIVIL ACTION, on an open account, tried before his Honor
Judge SYEMOUR, and a jury, at Spring Term, 1876, of LENOIR
Superior Court.

The action was brought to recover of the defendants
three hundred and eighty-eight 53-100 dollars, the price of
certain bricks and lumber, sold and delivered by plaintiff.

The plaintiff, on his own behalf, testified that in the latter
part of the year 1860, one Dr. Lewis Miller came to his
house to purchase brick for the church. He wanted to buy
about forty thousand. Plaintiff told him, that if he would
become personally responsible for the brick, he would let
him have them on his individual account.

Miller stated to plaintiff that he was one of the trustees
of the church, and had been authorized to purchase the
brick for the church, refusing to become personally respon-
sible. Afterwards the plaintiff agreed to furnish the brick
to said church on account of the church solely; and there-
upon he delivered to the church in Kinston, during the
years 1860–'61, 45,400 brick, at $8.25 per thousand.

Plaintiff further stated that he furnished said church
$13.98 worth of lumber, by order from the church; that

neither the brick nor the lumber has been paid for, and that both were subsequently used in building said church.

One Sympkins testified that he delivered some of the brick in question for the plaintiff at the said church; the plaintiff's team hauled them; that witness was employed as a mason to work on said church, and that he contracted to work with Miller, and was paid partly by note, signed by said Miller, Mr. Griffen and Mr. Hay, who all signed as trustees, and partly by an order on Mr. Griffen, signed by the same parties. Witness further stated that he carried out a bill for lumber to plaintiff's saw mill, and that the lumber came to the church in the plaintiff's wagon.

One Rouse, for the plaintiff, testified that he was employed by the plaintiff in the year 1860, at his saw mill, and received a bill for lumber made out for said church; he sawed 923 feet of lumber, and it was delivered to the church; witness charged the same to the church, on the mill book, which he exhibited, and the charge found.

On the part of the defence, one Webb stated that in 1860 the trustees of said church were Dr. Lewis Miller, R. C. Hay, F. G. Griffen and himself; that the building committee of the church were Miller, Griffen and Hay.

To this witness the defendants' counsel proposed to ask the following question: "State a conversation between yourself and the other trustees in regard to the brick which were to be used in building said church?" To this question plaintiff objected, on the ground that there was some evidence of an agency, either actual or implied, vested in Miller by the church; and the private instruction, not intended to be communicated to the plaintiff, should be excluded, as not affecting the plaintiff's right to recover— the counsel at the same time stating that by this question he proposed to prove from this conversation that Miller had no authority from the trustees to purchase said brick to be

charged to the church, but that he agreed to furnish them himself.

Objection sustained, and the question excluded; defendants excepted.

The counsel then proposed to ask the same question, stating that the defendants expected to show thereby that in said conversation the trustees refused to buy the brick, and that Miller then and there stated that he would buy the brick himself and give them to the church.

Objected to on the same grounds as the preceding; question again excluded, and the defendants excepted.

The defendants then introduced as witnesses on their behalf, the said Hay, Griffen and Webb. Each testified, that neither collectively nor individually, had they or either of them, authorized Miller to purchase the brick and lumber sued for. They each further stated, that they have had no notice or knowledge that said brick or lumber were charged to the church, until within the last two or three years—shortly before the bringing this suit. They further testified that said building committee was authorized to contract for the wood work only.

In his charge his Honor stated, that if the jury believed the evidence, Dr. Miller was one of the four trustees, and one of the members of this building committee of the church; that Miller ordered certain materials for the church, of the plaintiff, who delivered the same as ordered, and they were received and used in the church building; that the materials were charged by the plaintiff to the church,—all of which facts are evidence tending to show agency on the part of Miller, to the plaintiff.

That it was not necessary to render the defendants liable for Miller's acts, that he should have had any authority by a vote of the trustees; or that he should have had any authority as one of the building committee; or that the committee itself should have had authority to contract for brick

work; and that the facts that none of the other trustees, or members of the building committee joined in the order; that they had not authorized the purchase, and were not aware that the materials ordered had been charged to the church, were not sufficient to overcome the apparent agency of Miller.

Upon this intimation of his Honor's opinion, the defendants submitted to a verdict for the amount claimed by plaintiff. Judgment in accordance therewith; from which judgment the defendants appealed.

READE, J. The plaintiff furnished the defendants with brick and lumber, which they received and used in building their church. This clearly entitles the plaintiff to recover the value of the articles.

The defence set up is that Miller, one of the trustees of the church and one of the building committee, promised the trustees that he would furnish the brick and lumber as a gift without charge, and when the plaintiff delivered the articles, and the trustees received and used them, they, the trustees, supposed that Miller was furnishing them, as he had agreed to do. Now, that this was a gross imposition by Miller upon the trustees is plain enough; but how the plaintiff, who knew nothing of Miller's undertaking, is to be affected by it, we do not see.

We have thus far considered the case as if there had been no express contract with the plaintiff for the articles, and as if he had delivered them to the defendants, and they had received and used them without any express contract. In that case the *law implies* that the defendants were to pay their value.

But the defendants insist that the case does not stand upon an implied contract; for that Miller made an express contract with the plaintiff to deliver the articles to the defendants at the defendants' charge when he had no authority

to make the contract.  Very well; if Miller had no au-
thority to make the express contract, then it was void as if
there had been no contract, and so the case would still stand
upon the implied contract, or upon the confirmation of the
express contract made by Miller by the defendants receiving
and using the goods.

But again : the defendants insist that there was no con-
tract either express or implied, between them and the plain-
tiff; for that, by reason of what passed between them and
Miller, they thought that they were receiving the articles as
a gift from Miller; whereas, the plaintiff supposed that he
was delivering them on his own account, and that they were
to pay him for them.  So that their minds never met, and
there was a mutual mistake.  Not at all.  The plaintiff
never was under any mistake of law or fact.  He knew that
he was delivering his goods to the defendants, and that they
were receiving and using them, and he supposed that they
were bound to pay him for them.  There was no mistake
here.  The defendants were mistaken in supposing that
Miller was giving them the articles.  That was the only mis-
take. It was their misfortune, a misfortune which they might
easily have prevented by enquiring of the plaintiff whether
he was delivering the articles at their charge, or by telling
him of their understanding with Miller.  But they did
nothing of the sort; although they were receiving the arti-
cles for a considerable time, covering a portion of two years.
The plaintiff was in no fault.  It was reasonable for him to
suppose that Miller, one of the trustees, had authority to
make the contract with him for the trustees.  If he had had
any doubt about it, it would have been removed when he
carried the articles according to the contract and they re-
ceived and used them.  It would have been different if the
plaintiff had known of the understanding between Miller
and the defendants; or if Miller had told the plaintiff, when
he made the contract with him, that *he* was to be responsi-

ble, and that he was to give the goods to the church; but, on the contrary, the plaintiff wanted Miller to be personally responsible, and he refused and insisted upon the plaintiff's furnishing them at the charge of the church; which the plaintiff finally agreed to do.

The case most relied on and nearest in point for the defendant was this: A, a shop keeper, was indebted to B, and B, in order to save his debt, ordered a bill of goods of A; but before A received the order he had sold out to C, who filled the order. C did not send to B any bill of the goods, nor in any other way inform B that he had filled the order. And B received the goods, supposing that they had been furnished by A.

Now, there is this manifest difference between that case and this; there B did not know, and had no reason to believe, that C was furnishing the goods; here, the defendants did know that the plaintiff was furnishing the goods.

There C knew that he was furnishing goods which had not been ordered from him, but had been ordered from A, and he did not inform B of it. Here, the plaintiff did not know that he was furnishing goods which had not been ordered from him, but had been ordered from Miller; and the defendants did know that he was furnishing them. See *Baulton* v. *Jones*, and other cases cited and commented on in Benjamin on Sales, 47 and 324.

The conclusion is, that if Miller was authorized to make the contract, which he did make with the plaintiff, to deliver the articles to the church, at the charge of the church, then the church is liable upon the special contract; if Miller was not authorized to make the contract, and, therefore, the articles were delivered, received and used without any special contract, then the defendants are liable upon the implied contract. And the fact that something passed between them and Miller, to which the plaintiff was no party, and of which he had no knowledge, by which they

were imposed upon by Miller, cannot avail them. The evidence, therefore, was properly rejected.

There is no error.

PER CURIAM.                                        Judgment affirmed.